FILED

DEC 2 2 2006

*[signature]*
CLERK

# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## CENTRAL DIVISION

Golden West Telecommunications
Cooperative, Inc., *et al.*,     )
    )
    )
      Plaintiffs/Counter-Defendants,     )
    )
    )
      v.     )
    )
Global Crossing Telecommunications, Inc.,     )
    )
      Defendant.     )
    )
────────────────────────── )    **Civ. No. 06-3023**
    )
Global Crossing Telecommunications, Inc.,     )
    )
      Counter-Plaintiff/Cross-Plaintiff,     )
      Third-Party Plaintiff,     )
    )
      v.     )
    )
Golden West Telecommunications
Cooperative, Inc., *et al.*,     )
    )
      Plaintiffs/Counter-Defendants,     )
    )
and     )
    )
Onvoy, Inc. and Trans National Communications,
Inc.,     )
    )
      Defendants/Cross-Defendants,     )
    )
and     )
    )
Express Communications, Inc.,     )
    )
      Third-Party Defendant.     )

## ANSWER, SPECIAL AND AFFIRMATIVE DEFENSES, COUNTERCLAIM, CROSSCLAIM AND THIRD-PARTY COMPLAINT OF GLOBAL CROSSING TELECOMMUNICATIONS, INC.

1318907.02

Global Crossing Telecommunications, Inc. ("Global Crossing"), by undersigned counsel and for its answer and special and affirmative defenses to the complaint of Golden West Telecommunications Cooperative, Inc., *et al.* (collectively, "Plaintiffs") and its counterclaims, cross-claims and third-party complaint against Plaintiffs, defendants Onvoy, Inc. ("Onvoy") and Trans National Communications, Inc. ("TNCI") and third-party defendant Express Communications, Inc. ("Express"), respectfully alleges as follows:

1.      Admits that plaintiff purports to bring this action for the reasons stated.  Denies that Global Crossing has caused plaintiffs any damages or otherwise owes money to plaintiffs for any reason.

2.      States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the complaint.

3.      States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the complaint.

4.      States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of the complaint.

5.      States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the complaint.

6.      States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the complaint.

7.      States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the complaint.

8.      States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the complaint.

9.      States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the complaint.

10.     States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the complaint.

11.     States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the complaint.

12.     States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the complaint.

13.     States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the complaint.

14.     States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the complaint.

15.     States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the complaint.

16.     Admits the allegations contained in paragraph 16 of the complaint.

17.     States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the complaint.

18.     States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the complaint.

19.     States that the allegations contained in paragraph 19 of the complaint assert legal conclusions as to which no response is required.  Otherwise, denies the allegations contained in paragraph 19 of the complaint.

20.     States that the allegations contained in paragraph 20 of the complaint assert legal conclusions as to which no response is required.  Otherwise, denies the allegations contained in paragraph 20 of the complaint.

21.     State that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the complaint.

22.     Admits the allegations contained in paragraph 22 of the complaint.

23.     Admits the allegations of paragraph 23 of the complaint as it applies to Global Crossing.  States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the complaint as they apply to Onvoy or TNCI.

24.     Admits that Global Crossing utilized the originating and terminating access services and centralized equal access services of plaintiffs for a part of the traffic at issue in this proceeding.  Admits, upon information and belief, the allegations contained in the second sentence of paragraph 24 of the complaint.  Admits the allegations contained in the third sentence of paragraph 24 of the complaint to the extent that such traffic was sent over a private line (non-switched) circuit and that, with respect to such traffic, Global Crossing neither ordered nor purchased switched access services or centralized equal access services from plaintiffs.  Admits the allegations contained in the final sentence of paragraph 24 of the complaint to the extent that such traffic was delivered to or from SDN from or to Global Crossing.  Otherwise, denies the remaining allegations contained in paragraph 24 of the complaint.

25.     Admits that plaintiffs purported to send invoices to Global Crossing.  Denies that those invoices are in accordance with the rates, rules and regulations of the Federal Communications Commission ("FCC") and/or the South Dakota Public Utilities Commission

("SD PUC").  Admits that Global Crossing has not paid those invoices.  Denies that all or any part of the amounts stated on such invoices are due and owing to plaintiffs.

26.    Denies the allegations contained in paragraph 26 of the complaint.

27.    Repeats and realleges the allegations contained in paragraphs 1-26 hereof as if herein set forth in full.

28.    Admits that plaintiffs have filed tariffs with the FCC and the SD PUC.  Denies the remaining allegations contained in paragraph 28 of the complaint.

29.    Denies the allegations contained in paragraph 29 of the complaint.

30.    Admits that Global Crossing has not paid the amounts demanded by plaintiffs.  Denies that any such amounts are due and owing.  Denies the remaining allegations contained in paragraph 30 of the complaint.

31.    Denies the allegations contained in paragraph 31 of the complaint.

32.    Repeats and realleges the allegations contained in paragraphs 1-31 hereof as if herein set forth in full.

33.    Admits that, for some traffic, plaintiffs originated and terminated long distance calls for Global Crossing.  Denies the remaining allegations contained in paragraph 33 of the complaint.

34.    Denies the allegations contained in paragraph 34 of the complaint.

35.    Denies the allegations contained in paragraph 35 of the complaint.

36.    Repeats and realleges the allegations contained in paragraphs 1-35 hereof as of herein set forth in full.

37.    Upon information and belief, admits the allegations contained in paragraph 37 of the complaint.

38.     States that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the complaint.

39.     Denies that plaintiffs are, collectively or individually, entitled to all, or any of the relief requested in the complaint.

## AS AND FOR A FIRST SPECIAL AND
## AFFIRMATIVE DEFENSE

40.     The complaint fails to state claims upon which relief may be granted.

## AS AND FOR A SECOND SPECIAL AND
## AFFIRMATIVE DEFENSE

41.     The complaint is barred, in whole or in part, by the applicable statute of limitations.

## AS AND FOR A THIRD SPECIAL AND
## AFFIRMATIVE DEFENSE

42.     The complaint is barred by plaintiffs' prior material breaches of the Truth-in-Billing regulations of the FCC. 47 C.F.R. § 64.2402, and consequently of section 201(b) of the Communications Act of 1934, as amended..

## AS AND FOR A FOURTH SPECIAL AND
## AFFIRMATIVE DEFENSE

43.     The complaint is barred by plaintiffs' material violations of sections 201(b), 202(a) and 203(c) of the Communications Act of 1934, as amended.

## AS AND FOR A FIFTH SPECIAL AND
## AFFIRMATIVE DEFENSE

44.     The complaint is barred by plaintiffs' material violations of SDCL sections 49.31.12.2(3) and 49-31-11.

## AS AND FOR A SIXTH SPECIAL AND
## AFFIRMATIVE DEFENSE

45.     The complaint is barred by the doctrine of election of remedies.

## AS AND FOR A SEVENTH SPECIAL AND AFFIRMATIVE DEFENSE

46.     The complaint is barred by plaintiffs' fraud pursuant to SDCL 53-4-5.

## AS AND FOR AN EIGHTH SPECIAL AND AFFIRMATIVE DEFENSE

47.     The complaint is barred by plaintiffs' deceit pursuant to SDCL 20-10-1.

## AS AND FOR A NINTH SPECIAL AND AFFIRMATIVE DEFENSE

48.     The complaint is barred by plaintiffs' prior material breaches of their access tariffs.

## AS AND FOR A TENTH SPECIAL AND AFFIRMATIVE DEFENSE

49.     The complaint is barred by the doctrine of unclean hands.

## AS AND FOR AN ELEVENTH SPECIAL AND AFFIRMATIVE DEFENSE

50.     The complaint is barred by the doctrines of laches, waiver and estoppel.

## AS AND FOR A TWELFTH SPECIAL AND AFFIRMATIVE DEFENSE

51.     Global Crossing is entitled to setoff against any sums found owing to Plaintiff the amounts owed to Global Crossing as set forth in Global Crossing's Counterclaim which is incorporated in its entirety by reference.

## COUNTERCLAIMS, CROSS-CLAIMS AND THIRD-PARTY COMPLAINT

Global Crossing Telecommunications, Inc. ("Global Crossing") for its counterclaims, cross-claims and third-party complaint, respectfully alleges as follows:

**Parties**

1.      Counter-plaintiff/cross-plaintiff/third-party      plaintiff      Global      Crossing Telecommunications, Inc. ("Global Crossing") is a Michigan corporation with its principal place of business at 1080 Pittsford-Victor Road, Pittsford, New York 14534.  Global Crossing is an interexchange carrier and itself or through affiliates provides both wholesale and retail long distance services throughout the United States, including South Dakota.  As a part of providing its services, Global Crossing purchases originating and terminating access services and centralized equal access services from local exchange carriers ("LECs"), including certain of the plaintiffs herein.

2.      Upon information and belief, counter-defendant/third-party defendant Golden West Telecommunications Cooperative, Inc., is a corporation organized and existing under the laws of South Dakota with its principal place of business in South Dakota.

3.      Upon    information    and    belief,    counter-defendant/third-party    defendant Bridgewater Canistota Independent Telephone Company is a corporation organized and existing under the laws of South Dakota with its principal place of business in South Dakota.

4.      Upon information and belief, counter-defendant/third-party defendant Vivian Telephone Company is a corporation organized and existing under the laws of Colorado which has been authorized to transact business in South Dakota.

5.      Upon information and belief, counter-defendant/third-party defendant James Valley Cooperative Telephone Company is a cooperative organized and existing under the laws of South Dakota with its principal place of business in South Dakota.  Upon information and belief, no member of the cooperative is a citizen or resident of the State of Michigan or New York.

6.     Upon information and belief, counter-defendant/third-party defendant Northern Valley Communications, LLC is a limited liability company organized and existing under the laws of South Dakota with its principal place of business in South Dakota   Upon information and belief, no member of Northern Valley Communications, LLC is a citizen or resident of the State of Michigan or New York.

7.     Upon information and belief, counter-defendant/third-party defendant Midstate Communications, Inc., is a corporation organized and existing under the laws of South Dakota with its principal place of business in South Dakota.

8.     Upon information and belief, counter-defendant/third-party defendant Midstate Telecom, Inc., is a corporation organized and existing under the laws of South Dakota with its principal place of business in South Dakota.

9.     Upon information and belief, counter-defendant/third-party defendant Sioux Valley Telephone Company is a corporation organized and existing under the laws of the South Dakota with its principal place of business in South Dakota.

10.     Upon information and belief, counter-defendant/third-party defendant Valley Telecommunications Cooperative Association, Inc., is a corporation organized and existing under the laws of the South Dakota with its principal place of business in South Dakota.

11.     Upon information and belief, counter-defendant/third-party defendant Venture Communications Cooperative, Inc., is a corporation organized and existing under the laws of the South Dakota with its principal place of business in South Dakota.

12.     Upon information and belief, counter-defendant/third-party defendant West River Cooperative Telephone Company is a corporation organized and existing under the laws of the South Dakota with its principal place of business in South Dakota.

13.     Upon information and belief, counter-defendant/third-party defendant Western Telephone Company is a corporation organized and existing under the laws of the South Dakota with its principal place of business in South Dakota.

14.     Upon information and belief, counter-defendant/third-party defendant Faith Municipal Telephone Company is a municipality organized and existing under the laws of the South Dakota with its principal place of business in South Dakota.

15.     Upon information and belief, counter-defendant/third-party defendant Alliance Communications Cooperative, Inc., is a corporation organized and existing under the laws of the South Dakota with its principal place of business in South Dakota.

16.     Upon information and belief, counter-defendant/third-party defendant Beresford Municipal Telephone Company is an instrumentality of the City of Beresford and a municipal corporation with its principal place of business in South Dakota.

17.     Upon information and belief, counter-defendant/third-party defendant Interstate Telecommunications Cooperative, Inc., is a corporation organized and existing under the laws of the South Dakota with its principal place of business in South Dakota.

18.     Upon information and belief, counter-defendant/third-party defendant Kennebec Telephone Company, Inc., is a corporation organized and existing under the laws of the South Dakota with its principal place of business in South Dakota.

19.     Upon information and belief, counter-defendant/third-party defendant McCook Cooperative Telephone Company is a corporation organized and existing under the laws of the South Dakota with its principal place of business in South Dakota.

20.     Upon information and belief, counter-defendant/third-party defendant Splitrock Properties, Inc., is a corporation organized and existing under the laws of the South Dakota with

its principal place of business in South Dakota. The LECs identified in paragraphs 2-20 hereof are referred to herein collectively as the "defendant LECs."

21.    Counter/defendant South Dakota Networks, LLC ("SDN") is a limited liability company organized and existing under the laws of South Dakota with its principal place of business in South Dakota. Upon information and belief, SDN is owned by some or all of the entities identified in paragraphs 2-20 hereof. Upon information and belief, no member of South Dakota Networks, LLC is a citizen or resident of the State of Michigan or New York.

22.    Upon information and belief, cross-defendant Onvoy, Inc. ("Onvoy") is a corporation organized and existing under the laws of Minnesota with its principal place of business in Minnesota.

23.    Upon information and belief, cross-defendant Trans National Communications International, Inc. ("TNCI"), is a corporation organized and existing under the laws of Massachusetts with a principal place of business in Massachusetts.

24.    Upon information and belief, third-party defendant Express Communications, Inc. is a corporation organized and existing under the laws of South Dakota with a principal place of business in South Dakota. Express and SDN are under common ownership and control.

## Nature of Action

25.    If something appears too good to be true, it probably is. That aphorism describes this counterclaim, cross-claim and third-party complaint completely. SDN and Express, which are under common ownership and control (both being owned by the defendant LECs herein) and share common management, personnel, facilities and direction, thought that they had found a way to generate long distance revenue from the customers of their LEC owners, pay only a minor fee for the underlying carriage of that long-distance traffic and still be able to stick

someone (in this case, Global Crossing) with extortionate access fees that are among the highest in the nation. Thus, upon information and belief, Express concocted a deal with Onvoy under which Express would send long-distance traffic to Onvoy which in turn would send that traffic to TNCI. Because TNCI had a resale agreement with Global Crossing, TNCI would then send that traffic to Global Crossing for ultimate delivery to the recipients of the calls. For this traffic, Global Crossing received non-switched (private line) revenue that, for an intrastate South Dakota call, averaged approximately five cents per minute. Yet, on this very same traffic, SDN and the defendant LECs sought to charge Global Crossing originating or terminating access plus centralized equal access at rates exceeding twenty-five cents per call. In other words, rather than pay Global Crossing for transporting their long-distance traffic directly (or at least not misrepresenting its nature) whereby Global Crossing would have at least recovered its costs by including a switched access component into its long-distance rates, Express/SDN/LEC defendants, with the connivance of Onvoy and/or TNCI, attempted to game the system by receiving access charges from Global Crossing equal to at least five times what they paid ultimately to Global Crossing for long-distance transport. In normal parlance and legal parlance, this is fraud and that term describes the essence of this action.

## Jurisdiction and Venue

26.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, as this claim arises under the laws of the United States and 28 U.S.C. § 1332 as it satisfies the requirements for diversity jurisdiction and the amount in controversy exceeds $75,000, exclusive of interest or costs.

27.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a)(2) and (3).

**Common Allegations**

**1.     The Contractual Relationships among the Parties.**

28.     Upon information and belief, Express is a purchaser of long-distance telecommunications services from Onvoy for resale. Express purchases services in bulk from Onvoy for its use in providing long distance services to the end users of the LEC defendants.

29.     Upon information and belief, Onvoy in turn purchased wholesale long-distance services from TNCI which it then used to provide service to Express.

30.     TNCI for its part had entered into a Carrier Services Agreement with Global Crossing Bandwidth, Inc., an affiliate of GCTI. With respect to the Express traffic at issue here, upon information and belief, TNCI ordered and paid for non-switched (private line) services from Global Crossing. The term "non-switched services" simply means that there are supposed to be dedicated connections to the end-users so that there are no originating or terminating switched access charges associated with a call that traverses non-switched facilities. That is, in this circumstance, the originating or terminating LEC did not switch the call and therefore switched access charges are not due.

**2.     The Switched Access Charge Regime.**

31.     Switched access is a service provided by the LECs pursuant to federal and state tariffs. Those tariffs not only represent contractual relationships between carrier and customer, but also have the force of law. The tariffs of a carrier bind carrier and customer alike.

32.     Pursuant to their switched access tariffs, the defendant LECs offer to long-distance carriers, such as Global Crossing, the ability to originate and terminate calls from and to end user customers that utilize the network services of Global Crossing for their long-distance calls.

33.     Similarly, defendant SDN offers its centralized equal access services pursuant to its federal and state tariffs.

34.     In order to be bound by the tariffs of the defendant LECs and SDN, a long-distance carrier must purchase switched access or centralized equal access services from such entities.  The tariffs define certain types of "Feature Group" services that are available to the long-distance carriers for the purpose of receiving switched access services or centralized equal access services from the defendant LECs or SDN.

**3.     The Facts Giving Rise to This Controversy.**

35.     As described above, Express purchased long-distance services from Onvoy, which in turn, purchased long-distance services from TNCI.  For its part, TNCI purchased non-switched services from Global Crossing which, in part, were used to carry the traffic of Express.

36.     Express was formed to provide, and did provide, long-distance services to the end-user subscribers of the defendant LECs.  Because Express had no long-distance network of its own, it was required to purchase long-distance services from other long-distance companies.  At the same time, the defendant LECs, SDN and Express thought that they had discovered a way to receive revenue from multiple sources on each long distance call from their subscribers, yet avoid most of the expense associate with the provision of long-distance services.  Under this scheme, Express would purchase non-switched services from another intermediary long-distance carrier, which would route the long-distance calls to a facilities-based long distance carrier from which the intermediary carrier procured non-switched services.  Express would thus pay the intermediary long-distance carrier a few pennies per minute for the long-distance transport services it purchased, yet attempt to charge the underlying, facilities-based carrier its full switched access charges for each minute of traffic carried.

37.     To further this scheme, Express would direct SDN to deliver traffic, not to the Feature Groups of the underlying long-distance carrier, but to the private line of the intermediary carrier.  Yet, although Express would pay only a few pennies a minute for this service and the intermediary carrier would pay the underlying carrier for non-switched services (which did not include a switched access component), the defendant LECs and SDN would bill the underlying carrier their full switched access and centralized equal access charges.  The defendant LECs and SDN would bill these charges to the underlying facilities-based carrier even though that carrier had not purchased switched access or centralized equal access services from such entities.

38.     This is exactly the scheme that the defendant LECs, SDN and Express, with the connivance of Onvoy and TNCI, sought to perpetrate upon Global Crossing.  Upon information and belief, Express purchased a private line, non-switched service from Onvoy for the purpose of handling the long-distance traffic originated or terminated to the defendant LECs' end-users that subscribed to Express' long-distance services, even though those were switched services.

39.     Onvoy, in turn, utilized another intermediary.  It purchased a non-switched service from TNCI to handle this same traffic.

40.     TNCI, for its part, purchased a non-switched service from Global Crossing.

41.     As it turns out, SDN routed this traffic to Express (*i.e.*, it routed the traffic to itself), which in turn directed the traffic over the private line purchased from Onvoy.  The traffic was then routed to TNCI and then on to Global Crossing.  For each minute of traffic subject to this scheme, Global Crossing received a few pennies per minute for non-switched services purchased by TNCI under the Carrier Services Agreement.

42.     This traffic never traversed the Feature Groups that Global Crossing purchased from SDN or the defendant LECs.  Nonetheless, the defendant LECs and SDN billed to Global

Crossing their full switched access and centralized equal access charges. Defendants attempted to perpetrate this scheme upon Global Crossing, at a minimum, during the months of October through December 2004. When Global Crossing pointed out to SDN the illegal nature of this scheme and refused to pay the defendant LECs' and SDN's access bills, defendants promptly ceased engaging in this conduct.

43.    Moreover, the invoices rendered by the defendant LECs and SDN were inaccurate and unauditable. It is not possible to tell from such invoices which traffic was legitimate traffic that traversed the Global Crossing Feature Groups and which traffic was subject to the unlawful scheme described above.

44.    Had Express purchased long-distance services directly from Global Crossing or had not misrepresented the nature of the traffic delivered by Express, Global Crossing would have charged switched, as opposed to non-switched, rates, which would have included a switched access cost component. Global Crossing, as opposed to Express, would also have directed the routing of the traffic.

## Count One
### (Against the Defendant LECs and SDN; Violation of 47 U.S.C. § 201(b))

45.    Global Crossing repeats and realleges the allegations contained in paragraphs 1-44 hereof as if herein set forth in full.

46.    By charging Global Crossing for switched access and centralized equal access services that Global Crossing did not purchase, the defendant LECs and SDN engaged in unjust and unreasonable practices in contravention of section 201(b) of the Communications Act of 1934, as amended.

47.    Global Crossing has been damaged by such conduct in an amount to be determined at trial.

## Count Two
### (Against the Defendant LECs and SDN; Violation of 47 U.S.C. § 202(a))

48.    Global Crossing repeats and realleges the allegations contained in paragraphs 1-47 hereof as if herein set forth in full.

49.    By charging Global Crossing for switched access and centralized equal access services that Global Crossing did not purchase and not treating similarly situated long-distance carriers in a comparable fashion, the defendant LECs and SDN engaged in unjustly and unreasonably discriminatory practices in contravention of section 202(a) of the Communications Act of 1934, as amended.

50.    Global Crossing has been damaged by such conduct in an amount to be determined at trial.

## Count Three
### (Against the Defendant LECs and SDN; Violation of 47 U.S.C. § 203(c))

51.    Global Crossing repeats and realleges the allegations contained in paragraphs 1-50 hereof as if herein set forth in full.

52.    By charging Global Crossing for switched access and centralized equal access services that Global Crossing did not purchase, the defendant LECs and SDN have charged for services rendered in a manner inconsistent with their filed interstate tariffs in contravention of section 203(c) of the Communications Act of 1934, as amended.

53.    Global Crossing has been damaged by such conduct in an amount to be determined at trial.

**Count Four**
**(Against the Defendant LECs and SDN;**
**Violation of 47 U.S.C. § 201(b) and FCC Truth-in-Billing Regulations)**

54.     Global Crossing repeats and realleges the allegations contained in paragraphs 1-53 hereof as if herein set forth in full.

55.     By rendering bills to Global Crossing that failed to distinguish the services rendered to Global Crossing where Global Crossing's Feature Groups were utilized from charging Global Crossing for traffic subject to the unlawful scheme detailed above, defendant LECs and SDN have violated the Truth-in-Billing regulations promulgated by the Federal Communications Commission, 47 C.F.R. §§ 64.2401 and have committed unjust and unreasonable practices in violations of section 201(b) of the Communications Act of 1934, as amended.

56.     Global Crossing has been damaged by the violations of the FCC's Truth-in-Billing regulations and section 201(b) of the Communications Act of 1934, as amended, in an amount to be determined at trial.

**Count Five**
**(Against the Defendant LECs and SDN;**
**Attorneys Fees Pursuant to 47 U.S.C. § 206)**

57.     Global Crossing repeats and realleges the allegations contained in paragraphs 1-54 hereof as if herein set forth in full.

58.     Pursuant to section 206 of the Communications Act of 1934, as amended, Global Crossing is entitled to recover its reasonable attorneys' fees as a part of the costs of this case in an amount to be established by the Court.

## Count Six
### (Against the Defendant LECs and SDN;
### Violations of SDCL § 49-31-12.2(3))

59.     Global Crossing repeats and realleges the allegations contained in paragraphs 1-58 hereof as if herein set forth in full.

60.     By charging Global Crossing for switched access and centralized equal access services that Global Crossing did not purchase, the defendant LECs and SDN have charged for services rendered in a manner inconsistent with their filed intrastate tariffs in contravention of section 49-31-12.2(3) of the South Dakota Consolidated Laws.

61.     Global Crossing has been damaged by such conduct in an amount to be determined at trial.

## Count Seven
### (Against the Defendant LECs and SDN;
### Violation of SDCL § 49-31-11)

62.     Global Crossing repeats and realleges the allegations contained in paragraphs 1-61 hereof as if herein set forth in full.

63.     By charging Global Crossing for switched access and centralized equal access services that Global Crossing did not purchase and not treating similarly situated long-distance carriers in a comparable fashion, the defendant LECs and SDN engaged in unjustly and unreasonably discriminatory practices in contravention of section 49-31-11 of the South Dakota Consolidated Laws.

64.     Global Crossing has been damaged by such conduct in an amount to be determined at trial.

**Count Eight**
**(Against TNCI;**
**Breach of Contract)**

65.     Global Crossing repeats and realleges the allegations contained in paragraphs 1-64 hereof as if herein set forth in full.

66.     TNCI purchased switched services from Global Crossing pursuant to the Carrier Services Agreement for which it only paid non-switched rates.

67.     TNCI's failure to pay for services actually rendered resulted in a breach of the Carrier Services Agreement by TNCI by which breach Global Crossing has been damaged.

68.     Global Crossing fully performed its obligations to TNCI under the terms of the Carrier Services Agreement.

69.     Global Crossing is entitled to recover its damages resulting from TNCI's breach, in an amount to be determined at trial.

**Count Nine**
**(Against Express, Onvoy, TNCI;**
**Quantum Meruit, Unjust Enrichment and**
**Constructive Trust)**

70      Global Crossing incorporates paragraphs 1-69 hereof as if herein set forth in full.

71.     Global Crossing provided Express, Onvoy and TNCI with services in that it provided switched long-distance services to Express, Onvoy and/or TNCI, either directly or indirectly, for which it only received non-switched rates.

72.     Express, Onvoy and TNCI obtained substantial benefits from the use of the services provided by Global Crossing, including, without limitation, repackaging and reselling the services to its own customers for which each defendant has been paid but for which it has not paid Global Crossing.

73.     None of Express, Onvoy or TNCI has compensated Global Crossing for the full value of the services received from Global Crossing.

74.     Allowing any of Express, Onvoy or TNCI to retain the benefits of the services provided by Global Crossing without compensating Global Crossing would be inequitable.

75.     Allowing any of Express, Onvoy or TNCI to retain the benefits of the services provided to it by Global Crossing without fully compensating Global Crossing would result in the unjust enrichment of Express, Onvoy and/or TNCI at Global Crossing's expense.

76.     Global Crossing is entitled to recover the reasonable value of the services rendered to Express, Onvoy and/or TNCI in an amount to be determined at trial.

77.     Global Crossing is entitled to recover the amount by which Express, Onvoy and/or TNCI have been unjustly enriched in an amount to be determined at trial.

78.     Global Crossing is entitled to the imposition of a constructive trust on the revenues of Express, Onvoy and/or TNCI generated by Global Crossing's services and charges for which Global Crossing remains unpaid.

**Count Ten**
**(Against All Defendants;**
**Deceit –SDCL §20-10-1, 2)**

79.     Global Crossing repeats and realleges the allegations contained in paragraphs 1-78 hereof as if herein set forth in full.

80.     Defendants committed fraud against Global Crossing.  Defendants LECs, SDN and Express delivered long-distance traffic to Global Crossing through and with the knowledge of defendants Onvoy and TNCI for which Global Crossing would only receive compensation and non-switched rates, but for which Global Crossing would be billed switched access and centralized equal access charges by defendants LECs and SDN.

81.     Defendants Onvoy and TNCI accepted the traffic from defendants LECs, SDN and Express at non-switched rates that they knew or should have known was switched traffic.

82.     Defendants Express, Onvoy, and TNCI knowingly and with the intent to defraud Global Crossing made material misrepresentations of the nature of the traffic ultimately delivered to Global Crossing and/or suppressed information about the nature of the traffic knowing what the nature of the traffic was.

83.     Defendants LECs and SDN knowingly and with intent to defraud Global Crossing billed Global Crossing switched access charges (and thereby represented that the traffic was subject to switched access charges) when such defendants knew or should have known that Global Crossing had not purchased switched access or centralized equal access services with respect to such traffic.

84.     Such representations and omissions were false at the time that they were made, namely at a minimum, during the October -December, 2004 period when this scheme was active.

85.     Defendants made each of these representations and/or omissions with knowledge of its falsity or recklessly without regard for its truthfulness as a positive assertion, with the intent to deceive Global Crossing, and with the intent to induce Global Crossing to provide service to defendants at artificially reduced rates.

86.     Global Crossing was, in fact, deceived by defendants' misrepresentations and omissions

87.     Global Crossing reasonably and justifiably relied to its detriment upon the misrepresentations and omissions of defendants in extending service to defendant TNCI at non-switched rates.

88.     Global Crossing was damaged as a direct and proximate result of defendants' misrepresentations and omissions in an amount to be determined at trial.

## Prayer for Relief

For the foregoing reasons, as to the complaint, Global Crossing respectfully prays that the Court enter judgment in its favor and against each plaintiff as follows:

(a)     dismissing the complaint in its entirety, with prejudice;

(b)     awarding Global Crossing its costs of defending this action, including reasonable atorneys' fees; and

(c)     awarding such other, further and different relief as to the Court seems just and proper in the premises.

Global Crossing also respectfully prays that the Court, in order to remedy the misconduct of defendants as alleged above,  enter judgment in its favor on its counterclaims, cross-claims and third-party complaint and against each defendant herein, jointly and severally, as follows:

(a)     awarding money damages in an amount to be proven at trial, plus prejudgment interest;

(b)     awarding punitive damages;

(c)     awarding a full accounting of the number of long-distance minutes sent to Global Crossing pursuant to the unlawful scheme described herein; and

(d)     awarding such other, further and different relief as to the Court appears just and proper in the premises.

1318907.02

23

Dated this 22nd Day of December, 2006.

Respectfully submitted,

William M. Van Camp
Olinger, Lovald, McCahren & Reimers, P.C.
117 E. Capitol – PO Box 66
Pierre, SD  57501
Tel:     605.224.8851

*Attorneys for Global Crossing*
*Telecommunications, Inc.*

*Of Counsel:*

Eric A. Linden
Jaffe Raitt Heuer & Weiss
27777 Franklin Road
Suite 2500
Southfield, MI  48034
Tel:    248.351.3000
Fax:    248.351.3082

Michael J. Shortley ,III
Global Crossing North America, Inc.

1318907.02

24